**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CHARLES BARNARD et al.,           )
                                  )
        Plaintiffs,          )
                                  )
vs.                               )     2:03-cv-01524-RCJ-LRL
                                  )
LAS VEGAS METROPOLITAN POLICE     )     **ORDER**
DEPARTMENT et al.,                )
                                  )
        Defendants.          )
                                  )

This case arises out of a SWAT team raid of Plaintiffs Charles and Rita Barnard's home in Henderson, Nevada on December 8, 2001. Plaintiffs sued the Las Vegas Metropolitan Police Department ("LVMPD") and four officers thereof on seven causes of action: (1) Civil Rights Violations Pursuant to 42 U.S.C. § 1983 (Illegal Search and Seizure and Excessive Force Under the Fourth and Fourteenth Amendments); (2) Battery; (3) Intentional Infliction of Emotional Distress ("IIED"); (4) Civil Conspiracy; (5) Respondeat Superior; (6) Negligence; and (7) Loss of Consortium (Rita Barnard only). (*See* Am. Compl., May 26, 2004, ECF No. 10).

Judge Brian E. Sandoval granted summary judgment to Defendants. (*See* Summ. J. Order, Mar. 9, 2007, ECF No. 57). In an unpublished opinion, the Court of Appeals affirmed as to the illegal search and seizure and municipal liability claims, reversed as to the excessive force claim, and remanded the state law claims for an analysis of discretionary act immunity under *Martinez v. Maruszczak*, 168 P.3d 720 (Nev. 2007). (*See* Mem. Op., Feb. 4, 2009, ECF No. 70). The Court then granted the ensuing summary judgment motion as to the state law claims after a

*Martinez* analysis. (*See* Summ. J. Order, Jan. 26, 2010, ECF No. 98). Plaintiffs filed a Notice of Appeal (ECF No. 99), and the Court of Appeals granted Plaintiffs' voluntary dismissal of that appeal, (*see* Order and Mandate, Apr. 5, 2010, ECF No. 106). Only the excessive force claim was tried. The jury returned the following special verdict:

> 1. Did Charles Barnard forcibly resist when the officer Defendants attempted to handcuff him on December 8, 2001? [No.]
>
> 2. If your answer to Question 1 above is "No", did the officer Defendants make a reasonable mistake of fact that he was forcibly resisting arrest? [Yes.]
>
> 3. Did the following Defendants violate Charles Barnard's Fourth Amendment rights by using excessive force in seizing him in his home on December 8, 2001? [Yes as to all Defendants.]
>
> 4. What amount of damages did the defendants cause Charles Barnard to incur? [$2,111,656.52.]

(Verdict Form 1–2, Feb. 3, 2011, ECF No. 199). Defendants have filed renewed motions for judgment as a matter of law based both on qualified immunity and lack of evidentiary support, and also for remittitur or a new trial. Plaintiffs have moved for attorney's fees. For the reasons given herein, the Court denies the renewed motions for judgment as a matter of law, grants the motion for remittitur or a new trial, and grants the motion for attorney's fees in part.

**I.    LEGAL STANDARDS**

    **A.    Rule 50(b)**

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1), (a)(1)(B). If the court denies such a motion, "it is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). When the qualified immunity issue turns upon whether an officer made a reasonable mistake of fact, it is appropriate to submit the factual question to the

jury and use the jury's factual finding to answer the legal question:

> [W]hether the officers may be said to have made a "reasonable mistake" of fact or law . . . may depend on the jury's resolution of disputed facts and the inferences it draws therefrom. Until the jury makes those decisions, we cannot know, for example, how much force was used, and, thus, whether a reasonable officer could have mistakenly believed that the use of that degree of force was lawful.

*Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (citation omitted).

### B. Rule 59(a)

"The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1), (a)(1)(A).

### C. 42 U.S.C. § 1988(b) and Rule 54(d)

A court may in its discretion award any "prevailing party" in a § 1983 action reasonable attorney's fees as part of its costs. 42 U.S.C. § 1988(b). Because Congress intended § 1988 to "to attract competent counsel to prosecute civil rights cases" where victims cannot usually afford to pay prevailing market legal fees, "a court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008) (quoting *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir.1989)) (internal quotation marks omitted) (alteration in original). Denial of attorney's fees to a prevailing § 1983 plaintiff is appropriate only when his success is "purely technical or *de minimis*." *Id.* (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)).

A § 1983 defendant, by contrast, may only recover fees directly traceable to the defense of claims that are "frivolous." *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011). "A case may be deemed frivolous only when the 'result is obvious or the . . . arguments of error are wholly without merit.'" *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981) (citation

1  omitted)) (alteration in original).

2      Although an award of attorney's fees must be separately supported by statute, rule, or

3  order, Rule 54(d) mandates an award of costs to a prevailing party. *See* Fed. R. Civ. P. 54(d)(1).

4  **II.     ANALYSIS**

5      **A.     Renewed Motions for Judgment as a Matter of Law and for a New Trial**

6      The jury found that Defendants violated Barnard's rights by using excessive force, but it

7  also found that Defendants reasonably thought he was resisting. Defendants ask the Court to

8  grant them qualified immunity due to the jury's finding that they made a reasonable mistake of

9  fact that Barnard was resisting. The Ninth Circuit reversed Judge Sandoval's grant of qualified

10  immunity at the summary judgment stage because there were still disputed issues of fact as to

11  what happened at the scene. After the close of trial evidence, but before the verdict, the Court

12  refused to grant qualified immunity under Rule 50(a) because two factual questions, the answers

13  to which would affect the qualified immunity analysis, were still disputed: (1) did Barnard

14  resist?; and (2) if not, did Defendants reasonably believe he was resisting? If the answer to

15  either question were "yes," the Court might grant qualified immunity on a Rule 50(b) motion

16  even if the jury also found excessive force. In other words, the jury was to answer the first

17  *Saucier* prong (the constitutional violation) directly and make factual determinations bearing on

18  the Court's determination of the second *Saucier* prong (qualified immunity).

19      The jury answered that Defendants used excessive force and that Barnard did not resist,

20  but that Defendants reasonably believed he resisted. Defendants may avoid liability under Rule

21  50(b) if: (1) a reasonable jury could not have found that Defendants used excessive force either

22  on the facts generally or consistent with the conclusion that Defendants reasonably believed that

23  Barnard was resisting (an unsupported or inconsistent verdict); or (2) it would not have been

24  clear to a reasonable officer that the force Defendants used was excessive to restrain a person

25  who was resisting (a judgment as a matter of law on qualified immunity). Unfortunately, it is not

1 clear whether the jury found that Defendants reasonably believed Barnard was resisting only
2 during the initial fall, or throughout the entire time he was restrained.  The jury may have found
3 that Defendants' continued use of force after the initial takedown was unreasonable and not
4 based on any reasonable mistake of fact, or that it would have been excessive even if Barnard
5 had in fact been resisting, and this would be a legally permissible finding:

> We analyze excessive force claims in the arrest context under the Fourth Amendment's reasonableness standard.  We balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" and ask whether, under the circumstances, "including the severity of the crime at issue, the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight."

*Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (footnotes omitted).  A finding of excessive force is not necessarily precluded even where a civil plaintiff has been convicted of resisting arrest over the same incident, because it is possible that an arresting officer may use constitutionally excessive force even though a civil plaintiff has unlawfully resisted. *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937–38 (9th Cir. 1980) (reversing summary judgment on an excessive force claim).

Defendants could still be entitled to qualified immunity due to the jury's finding that they reasonably believed Barnard was resisting, however.  Even though a reasonable jury could find that the force used here was excessive despite Defendants' reasonable belief that Barnard was resisting, the Court could still rule that the state of the law was not clear such that a reasonable officer would have thought the force used in this case was excessive under those circumstances. It was clear at the time that the mere fact a suspect resists does not mean officers may use any degree of force they wish. *See id.*  However, it may not have been clear that the degree of force Defendants used in this case was excessive.

Barnard testified that Defendant Theobald, while handcuffing him, fell and pulled him to the ground with him. Reasonably believing that he was resisting, Defendant Clark used a choke

hold to pull Barnard back up. Defendants remained on top of him and stunned him twice with a "cap stun" until they could get his hands behind his back to handcuff him. Defendants Radmanovich and Theobald then kept Barnard pinned to the ground one after the other with their knees in his back or neck, while the other officers continued the raid.

The jury found that despite their reasonable mistake that Barnard was resisting, the force Defendants used was still constitutionally excessive, and this is a legally permissible result. *See id.* It is an officer's mistake as to what degree of force is permitted under the facts as he perceives them, not his mistake as to underlying facts—such as whether a plaintiff was resisting—that entitles him to qualified immunity. *See Saucier*, 533 U.S. at 205. The Ninth Circuit has held that the method of restraint supported by the evidence at trial in this case may be constitutionally excessive. When officers continue to press their weight onto a prone and handcuffed person's neck and torso when the person is no longer resisting, it can constitute excessive force under the Fourth Amendment. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056–57 (9th Cir. 2003) (reversing summary judgment and remanding for trial because it was clear at the time that compression asphyxia could result from one or more officers kneeling on a suspect's back or neck to restrain him). The *Drummond* court found that the right against such a method of restraint had been clearly established by the time of the events in that case, which occurred on March 26, 1999. *See id.* at 1054, 1061–62. The events in the present case occurred almost three years later.

Defendants also request a new trial or remittitur of the verdict. The Court rejects the argument that the finding of excessive force was not supported by substantial evidence, as Barnard testified about his having been pulled and pinned to the ground, as described. The verdict was not against the clear weight of the evidence, which would have supported a verdict for either side. Still, the verdict leaves critical questions unanswered, and the Court will therefore grant a new trial if the parties do not accept remittitur. As noted above, although the

jury found that Defendants reasonably believed Barnard was resisting, at least initially during the fall, it is not clear Defendants believed he was resisting after he was handcuffed and pinned to the ground.  If he had ceased resisting, the continuing pinning of Barnard to the ground with a knee in his back or neck could constitute excessive force even if he had been previously resisting.  The verdict clearly rejects liability based purely on the initial takedown, but it appears to find liability based on the subsequent restraint.  Unfortunately, although the verdict is consistent with this interpretation, it is not clear form the verdict whether Defendants reasonably believed Barnard continued to resist after he was handcuffed.  The Court will therefore grant the motion for a new trial to determine more specifically whether Defendants reasonably believed Barnard was resisting not only initially, but also after he was subdued, if the parties reject remittitur.  If the answer to the latter question is no, the jury may find liability.  If the answer is yes, however, the Court should then find qualified immunity in response to a Rule 50(b) motion.

     Next, Defendants argue the verdict was excessive and based on inadmissible evidence.  Defendants note Plaintiffs requested a verdict in the amount of the cost of medical bills plus $1.8 million for pain and suffering.  Defendants argue that Barnard's testimony as to his medical expenses cannot support the verdict, because no actual medical bills were submitted.  The Court finds that Barnard's testimony as to his medical bills was admissible, competent evidence.  Defendants cite to Texas and Missouri state law cases for the proposition that medical expenses must be shown to have been reasonable and necessary.  Defendants cite no controlling authority requiring this type of verification.  The insurance printout was some evidence of the amount charged, and the jury credited that evidence.  Defendants also argue that because Barnard's medical records do not indicate neck or upper back pain until a year after the incident—after he had fallen from a chair at work—that the evidence does not support a conclusion that the incident with the police caused his injuries.  Defendants were able to argue this to the jury, and the jury credited Plaintiffs' theory of causation.

Defendants also argue that the pain and suffering award was excessive. The Court agrees. More importantly, the award was based upon an improperly suggestive illustration to the jury. Specifically, Defendants take issue with opposing counsel's argument to the jury that they should award Barnard ten cents for every remaining minute of his life, because Barnard did not provide evidence of how long he would live, he testified that "some days are better than others," and the award did not reflect present value. Defendants also cite cases—mainly from state courts—rejecting mathematical formulations of pain and suffering calculations. The practice is controversial, and the federal courts have not said much about it. The Fifth Circuit permits remittitur based purely on such an argument to the jury, which it considers to be improper. *See Country Mut. Ins. Co. v. Eastman*, 356 F.2d 880, 881–82 (5th Cir. 1966) (citing *Johnson v. Colglazier*, 348 F.2d 420 (5th Cir. 1965)). The Ninth Circuit has not directly ruled on the issue but has simply noted in a footnote that no "definite standard or method of calculation is prescribed by law." *See Hilao v. Estate of Marcos*, 103 F.3d 789, 793 n.3 (9th Cir. 1996). In the Nevada state courts, such a suggestion may only be made to the jury as an illustration of how to make a calculation, and it results in error if the trial court does not sufficiently admonish the jury that the suggestion can only be used as a method of calculation, not as a suggestion of amount. *Johnson v. Brown*, 345 P.2d 754, 759 (Nev. 1959).

Although not authoritative in this § 1983 action, the Court agrees with the reasoning in *Johnson v. Brown*. And in light of the award in this case, the Court believes that it did not properly admonish the jury in this regard. In closing arguments, Plaintiff's attorney asked the jury for $219,496.52 in past medical damages. (Trial Tr. 1491:13–15, ECF No. 236, at 50). She also asked for $1,892,160 in pain and suffering damages as a result of the ten-cents-per-minute calculation. (*Id.* 1490:23–1491:9, ECF No. 236, at 49–50). She noted that the total was $2,111,656.52. (*Id.* 1492:1–3). The jury awarded exactly this amount. (*See* Verdict Form 2). It is therefore almost certain that the jury adopted Plaintiff's attorney's suggested calculation

1  wholesale and did not merely use it as an illustration of a permissible method of calculation.
2  Without disturbing the award for medical damages, the court believes that pain and suffering
3  damages should be reduced by $500,000 and that a just and reasonable amount of damages for
4  pain and suffering should bring the verdict to $1,611,656.52.  The Court will therefore grant a
5  new trial on both liability and damages unless the parties accept this remittitur within twenty
6  (20) days. *See Minthorne v. Seeburg Corp.*, 397 F.2d 237, 244–45 (9th Cir. 1968).

7  Finally, Defendants list seven alleged trial errors: (1) "overbroad" and "unduly
8  prejudicial" testimony; (2) improper refusal to allow Defendants to argue a stipulated fact; (3)
9  erroneous hearsay rulings; (4) improper exclusion of evidence based on the Fifth Amendment;
10 (5) improper rejection of proposed jury instructions; (6) improper exclusion of witnesses; and (7)
11 "miscellaneous acts of judicial misconduct."

12 First, Defendants argue that admission of evidence concerning the underlying warrant
13 and investigation was "overbroad" and prejudicial because the only issue to be tried was
14 excessive force.  In addition to providing background information to the jury, however, this
15 evidence was directly relevant to the excessive force issue because it concerned the subjective
16 knowledge of the police at the scene.  In fact, evidence of a warrant and conditions at the scene
17 could in many cases be viewed by a jury as exculpatory because it may tend to show that an
18 officer's actions are reasonable under the circumstances as known to him.  Defendants argue that
19 the jury may have been inflamed about a perceived improper intrusion on the sanctity of
20 Barnard's home. Defendants also argue that Rita Barnard's testimony about the actions of the
21 officers inside the apartment unrelated to the seizure of Charles Barnard was inadmissible bad-
22 acts evidence and unduly prejudicial.  The Court admitted all of this evidence because it was
23 relevant to the officers' credibility and state of mind at the scene.

24 Second, Defendants complain that the Court refused to allow them to admit the stipulated
25 fact that the initial stop of Barnard was justified under *Terry* because the officers could have

thought Barnard was the suspect for whom they had a warrant to arrest. Plaintiffs respond that this was not in fact stipulated. Defendants argue that the Court improperly allowed Barnard to testify that he didn't know what charges officers filed against him, without allowing Defendants to impeach him with evidence that probable cause was found at a preliminary hearing. They also argue that the Court did not allow certain evidence tending to show that the officers reasonably believed Barnard had committed battery against one of the officers. But the jury in fact found that the officers made a reasonable mistake in this regard.

Third, Defendants argue the Court improperly admitted hearsay evidence and disallowed non-hearsay evidence. They complain that the Court improperly disallowed medical records that could have been authenticated as business records, that were admissible as statements by Barnard to a medical provider, and that included impeachment information. Plaintiffs argue that these were properly excluded as hearsay because they did not contain Barnard's own statements but the report of Tom Brooks. Plaintiffs note that the Court gave Defendants an opportunity to call Brooks to testify, but they did not. The Court excluded these documents because Defendants offered no witness who could authenticate them. Defendants also complain that the Court excluded statements in Barnard's medical records concerning a 2004 car accident but allowed Barnard to testify, without corroborating evidence, that he had undergone surgeries. Defendants also argue that Barnard's testimony about his medical condition, surgeries, and bills was hearsay. This testimony was not hearsay, because it was not testimony of out-of-court statements. It was testimony concerning facts of which Barnard claimed direct knowledge. Defendants simply object that Barnard's testimony on these subjects was not further corroborated. But it need not have been. It was competent testimony.

Fourth, Defendants argue the Court improperly excluded under the Fifth Amendment: (1) questions concerning David Barnard's contact with the officers that evening; and (2) an unrelated alleged assault by Charles Barnard against a co-worker that Defendants argue was

relevant to showing Barnard's true medical condition. The Court did not err in excluding evidence that Barnard committed an unrelated assault. Plaintiffs note that the co-worker had not been timely disclosed, in any case. It is not clear what piece of evidence related to David Barnard Defendants have in mind.

Fifth, Defendants argue that the Court improperly excluded certain jury instructions. Specifically, Defendants argue that their proposed instruction 5 would have explained that intent, and not mere negligence, is required to find a constitutional violation, that their proposed instruction 11 defined probable cause, that their instructions 15–17 further explained limitations on force, and that instruction 18 was on qualified immunity. The Court did not err. The Court used Ninth Circuit pattern instructions and was careful not to add or detract from them for fear of error. The instructions used properly explained the constitutional standards. Moreover, putting the legal question of qualified immunity directly to the jury would have been error.

Sixth, Defendants argue the Court excluded "key witnesses." Tom Cicero was the coworker Barnard allegedly assaulted. Vernita Portillo was prepared to testify about statements by Barnard about falling out of a chair and her personal observations about his condition before and after the fall. Don Cameron was prepared to testify about national standards for training police officers and how they are trained to react. Plaintiffs argue that the Court properly excluded these witnesses due to untimely disclosure. Also, the Court notes that Cameron's testimony would have been irrelevant, because police training and practice does not affect the standards of the Fourth Amendment. What if the standard training and practice is to act in a way that is unreasonable? It is whether an officer's actions were reasonable that the jury is to decide, not whether the officer acted as he was trained to act or how other officers typically act. Police practice and training is no evidence of whether particular behavior is reasonable under the Fourth Amendment. "Unreasonable" means something different from "atypical." The Fourth Amendment holds officers to a standard of reasonableness, not merely a standard of typicality.

1  The authors of the Fourth Amendment wrote it with recent memories of unreasonable (but
2  unfortunately typical) government behavior in mind.  If training standards or patterns of behavior
3  result in unreasonable seizures, it is the former that must change to accommodate the Fourth
4  Amendment, not the other way around.

5  Seventh, Defendants complain of "miscellaneous acts of judicial misconduct," such as
6  the Court's sympathizing with Rita Barnard during her testimony and the admission of Barnard's
7  previously undisclosed insurance document.  The Court finds that although the pain and
8  suffering award was excessive, no alleged trial error puts the verdict in doubt.

9  **B.     Attorney's Fees**

10  Plaintiff asks the Court for $315,505.00 in attorney's fees and $61,408.80 in costs for
11  services provided from December 2010 through trial.  Defendants argue that Plaintiff was only
12  successful on one of nine claims and asks the Court to reduce the total award to $69,275 in fees
13  and $32,637.09 in costs.  But Plaintiff prevailed on the only claim remaining for trial (excessive
14  force), and does not ask for fees related to the entire case, but only for fees related to the final
15  claim incurred since December 2010.  The degree of recovery on that claim was significant, but
16  will be reduced by remittitur unless Plaintiff selects a new trial on damages.

17  The Court grants the motion in part.  In calculating the lodestar, the Court will accept the
18  rates proffered by movants but will not accept all hours as reasonable.  The case was not
19  particularly complicated, and discovery had closed when movants took the case.  The litigation
20  history of the case was neatly laid out for the parties in the electronic record.  Movants had
21  merely to review the record as it stood before trial, and apart from responding to a motion in
22  limine, they needed only prepare for trial itself.  Over 600 attorney hours and 200
23  paralegal/assistant hours in preparation for a single-claim excessive force trial after pretrial
24  practice is complete is excessive.  The trial itself took roughly fifty hours.  The Court will
25  therefore reduce the claimed hours by 40% in calculating the lodestar to be $189,303 and will

1   not apply a multiplier. Finally, costs must be awarded. Plaintiff attaches affidavits and

2   authenticated billing sheets complying with the requirements of Local Rule 54-16.

### CONCLUSION

IT IS HEREBY ORDERED that the Motions for Judgment as a Matter of Law (ECF Nos. 204, 205) are DENIED.

IT IS FURTHER ORDERED that the Motion for a New Trial or Remittitur (ECF No. 209) is GRANTED. The parties shall have twenty (20) days from the date of this order to choose between remittitur to $1,611,656.52 in damages or a new trial.

IT IS FURTHER ORDERED that the Motion for Attorney's Fees (ECF No. 206) is GRANTED in part and DENIED in part. Attorney's fees are awarded in the amount of $189,303, and costs are awarded in the amount of $61,408.80, for a total award of $250,711.80.

IT IS SO ORDERED.

Dated this 7th day of June, 2011.

_____
ROBERT C. JONES
United States District Judge