**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLES BARNARD et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> LAS VEGAS METROPOLITAN POLICE ) <br> DEPARTMENT et al., ) <br> ) <br> Defendants. ) <br> ) | 2:03-cv-01524-RCJ-LRL <br><br> **ORDER** |

This case arises out of a SWAT team raid of Plaintiffs Charles and Rita Barnard's home in Henderson, Nevada on December 8, 2001. The Court of Appeals has reversed in part and remanded for a recalculation of attorney's fees and pre- and post-judgment interest.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs sued the Las Vegas Metropolitan Police Department ("LVMPD") and four officers thereof on seven causes of action: (1) Civil Rights Violations Pursuant to 42 U.S.C. § 1983 (Illegal Search and Seizure and Excessive Force Under the Fourth and Fourteenth Amendments); (2) Battery; (3) Intentional Infliction of Emotional Distress; (4) Civil Conspiracy; (5) Respondeat Superior; (6) Negligence; and (7) Loss of Consortium (Rita Barnard only). (*See* Am. Compl., May 26, 2004, ECF No. 10).

Former Judge Brian E. Sandoval granted summary judgment to Defendants. (*See* Summ. J. Order, Mar. 9, 2007, ECF No. 57). In an unpublished opinion, the Court of Appeals affirmed as to the illegal search and seizure and municipal liability claims, reversed as to the excessive

force claim, and remanded the state law claims for an analysis of discretionary act immunity under *Martinez v. Maruszczak*, 168 P.3d 720 (Nev. 2007). (*See* Mem. Op., Feb. 4, 2009, ECF No. 70). The Court then granted the ensuing summary judgment motion as to the state law claims after a *Martinez* analysis. (*See* Summ. J. Order, Jan. 26, 2010, ECF No. 98). Plaintiffs appealed, and the Court of Appeals granted Plaintiffs' voluntary dismissal of that appeal. (*See* Order and Mandate, Apr. 5, 2010, ECF No. 106). Only the excessive force claim was tried. The jury returned the following special verdict:

> 1. Did Charles Barnard forcibly resist when the officer Defendants attempted to handcuff him on December 8, 2001? [No.]
>
> 2. If your answer to Question 1 above is "No", did the officer Defendants make a reasonable mistake of fact that he was forcibly resisting arrest? [Yes.]
>
> 3. Did the following Defendants violate Charles Barnard's Fourth Amendment rights by using excessive force in seizing him in his home on December 8, 2001? [Yes as to all Defendants.]
>
> 4. What amount of damages did the defendants cause Charles Barnard to incur? [$2,111,656.52.]

(Verdict Form 1–2, Feb. 3, 2011, ECF No. 199). Defendants filed renewed motions for judgment as a matter of law based both on qualified immunity and lack of evidentiary support, and also for remittitur or a new trial. Plaintiff moved for attorney's fees. The Court denied the renewed motions for judgment as a matter of law, granted the motion for remittitur or a new trial, and granted the motion for attorney's fees in part.

      The Court of Appeals affirmed the denial of the renewed motions for judgment as a matter of law and the award of costs but reversed the order in part as to attorney's fees, directing the Court to provide a more detailed explanation of the 40% reduction in requested fees, directing the Court to award post-judgment interest, and directing the Court to consider awarding prejudgment interest, noting that the Court may award prejudgment interest upon that portion of Plaintiff's damages the Court believes were "likely" given for past pain and suffering and

1  medical expenses.

2  **II.     INTEREST**

3       Prejudgment interest is awarded according to state law in diversity cases. *Mutuelles Unies*
4  *v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992).  But this is a federal-question case.  The
5  federal rate is "the weekly average 1-year constant maturity Treasury yield, as published by the
6  Board of Governors of the Federal Reserve System, for the calendar week preceding the date of
7  the judgment . . . ." 28 U.S.C. § 1961(a).  That rate is currently 0.13% per annum.  The Court
8  determines that $606,207.63 of the award of $1,611,656.52 was likely (in this case, almost
9  surely) for past pain and suffering and medical expenses: $219,496.52 in medical expenses and
10 $386,711.11 for past pain and suffering.  Plaintiff asked the jury for precisely $219,496.52 in
11 medical expenses and for a total of $1,892,160 in past and future pain and suffering damages
12 under a calculation of ten cents per minute for "constant" pain from the date of the event until the
13 estimated date of Plaintiff's death, noting that the event occurred when Plaintiff was age 39 and
14 Plaintiff would presumably live 36 years beyond that age to age 75. (*See* Tr. 1490–91, Feb. 3,
15 2011, ECF No. 236, at 49–50).  The jury awarded exactly the total of $219,496.52 and
16 $1,892,160.  The Court reduced the pain and suffering award by $500,000, leaving $1,392,160
17 for past and future pain and suffering, without disturbing the verdict for medical expenses.
18 (*See* Order 9, June 7, 2011, ECF No. 238).  Plaintiff was 39 in 2001 when the event occurred,
19 and the judgment was entered in 2011, when Plaintiff was approximately 49, meaning
20 prejudgment pain and suffering accounts for about 10 of the estimated 36 years Plaintiff had
21 remaining when the event occurred.  Ten thirty-sixths of $1,392,160 is $386,711.11.  The total
22 award for past pain and suffering and medical expenses was therefore $606,207.63.  Prejudgment
23 interest on this amount during the 3534 days between December 8, 2001 and judgment on
24 August 11, 2011, compounded on December 8 of each year, *see* 28 U.S.C. § 1961(b), is
25 $7660.76.  Post-judgment interest on the full award of $1,611,656.52 is $5.74 per day.  The

Court will amend the Judgment to reflect these amounts.

### III.    ATTORNEY'S FEES

Finally, the Court will further explain its award of attorney's fees. As the Court noted in its order, it reduced the amount of fees requested by 40% because it believed the hours claimed were unreasonable by 40%. The Court will not examine the hourly charges line-by-line, as it does not believe that is what the Court of Appeals has requested:

> We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." The fee applicant . . . must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (Kagan, J.) (citations omitted).

However, the Court has more closely examined the rationale for the award and determined that it made an error. The Court finds that its award should now be adjusted because the Court applied its 40% reduction to the entire request, when that rationale, which the Court retains, only applies to trial counsel's fees, not to pretrial counsel's fees.

Plaintiff requested $315,505 in attorney's fees, and the Court awarded 60% of this amount based upon the rationale that only 60% of the hours claimed for the trial work was reasonable. The total fees requested for trial work was $209,164. Attorney Armeni of law firm Gordon Silver attested to having spent 378 hours preparing for and conducting the trial in 2010 and 2011 as lead attorney. (*See* Armeni Decl. ¶ 7, Mar. 7, 2011, ECF No. 206-2, at 2). She also attested that Attorney Lambrose assisted with 225.60 hours of work, that Paralegal Rashidi spent 150.30 hours, that Investigator Tremmel worked 28.80 hours, and that a few other attorneys worked a few hours each. (*See id.* ¶¶ 8–11). The Court maintains its assessment that only 60% of

the hours worked in preparation for trial were reasonable and awards a fee for this portion of the work of $125,498.40, accordingly.

The Court now separately analyzes the portion of fees requested for pretrial counsel's work of 354.47 hours between 2003 and 2010, accounting for $106,341 of the total fee request. (*See* Potter Decl., Mar. 4, 2011, ECF No. 206-3, at 11). The Court accepts both the rate of $300 per hour and the 354.47 hours as reasonable. (*See id.* ¶ 2). Attorney Potter engaged in significant pretrial practice, discovery, and appellate practice for approximately seven years in this case, and the hours he expended were reasonable, e.g., ten hours to draft the Complaint, twenty hours to draft an opposition to a motion for summary judgment, approximately one-hundred hours total for appellate briefings and appearance in San Francisco, and twenty-five hours for drafting an opposition to another motion for summary judgment. Most of the remaining hours were for time spent in court or in depositions.[1] Although only one of seven claims were ultimately successful, there was significant success on that claim, which was closely related to the other claims. The Court will not reduce hours worked based upon lack of success on some claims. In summary, Plaintiff is entitled to $125,498.40 in fees for the work performed by Gordon Silver and $106,341 in fees for the work performed by Attorney Potter, for a total award of $231,839.40.

As the Court of Appeals noted, "degree of success" is a critical factor in determining attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). But it is only a factor as to whether to "adjust the fee upward or downward" from the lodestar amount. *Id.* at 434. Degree of success is not relevant to calculating the lodestar amount itself, which is the "objective basis on which to make an initial estimate of the value of a lawyer's services," and which is calculated by multiplying "the number of hours reasonably expended on the litigation multiplied by a

---

[1] By contrast, a large percentage of Gordon Silver's hours were for entries such as "review case file materials." That is an appropriate use of time in preparation for trial, but the Court finds that given its overall sense of the suit, the amount of time billed was excessive. *See Fox*, 131 S. Ct. at 2216.

reasonable hourly rate." *Id.* at 433.  "The district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Id.* at 434 (internal quotations marks omitted).  The Court previously calculated the lodestar amount to be 40% of what Plaintiff claimed, based upon the 40% of hours claimed "that were not reasonably expended," *id.*, and the Court declined to deviate upward or downward from that lodestar amount.

Although the Court has upon remand calculated separate lodestars for the two firms providing pretrial and trial services, respectively, the Court retains its estimation that only 60% of the hours expended for the latter were reasonable, and the Court does not choose deviate from either lodestar calculation.  It will neither increase Gordon Silver's fees nor decrease Attorney Potter's.  The *Hensley* Court noted that it may be appropriate to compensate a Plaintiff for attorney hours spent on unsuccessful claims that were so related to the successful claims that the hours cannot in equity be severed from those spent on successful claims. *See id.* at 434–37.  That is precisely the case here with respect to Attorney Potter's fees.  Because the claims Attorney Potter litigated were all related to the successful claim, the Court will not deviate down from the lodestar as to Attorney Potter's pretrial labor based upon the fact that only one of the claims proceeded to trial.  But the requirement that hours must be "reasonably expended" applies whether a Plaintiff succeeds on all claims or fewer than all claims. *See id.* at 435.  That is relevant here with respect to Gordon Silver's fees.  The Court's decision in this case as to Gordon Silver's fees was not a deviation down from the lodestar based upon a perception that certain hours of work were related only to unsuccessful claims, but a part of the lodestar calculation itself.  The Court has always accepted that all claims litigated by Gordon Silver were successful, because that firm litigated only the single claim that went to trial, and that claim was successful:

> The Court grants the motion in part. In calculating the lodestar, the Court will accept the rates proffered by movants but will not accept all hours as reasonable. The case was not particularly complicated, and discovery had closed when movants took

> the case. The litigation history of the case was neatly laid out for the parties in the electronic record. Movants had merely to review the record as it stood before trial, and apart from responding to a motion in limine, they needed only prepare for trial itself. Over 600 attorney hours and 200 paralegal/assistant hours in preparation for a single-claim excessive force trial after pretrial practice is complete is excessive. The trial itself took roughly fifty hours. The Court will therefore reduce the claimed hours by 40% in calculating the lodestar to be $189,303 and will not apply a multiplier.

(Order 12–13, June 7, 2011, ECF No. 238). The Court's 40% reduction in hours for Gordon Silver was and remains based upon an unreasonable amount of attorney hours expended while accepting that Plaintiff was successful on all relevant claims. The Court has not changed its opinion that the requested hours for trial work were unreasonable. The Court's previous error was in applying its 40% reduction rationale to Attorney Potter's fees for pretrial work.

## CONCLUSION

IT IS HEREBY ORDERED that the Order of September 16, 2011 (ECF No. 259) is VACATED.

IT IS FURTHER ORDERED that the Judgment of August 11, 2011 (ECF No. 254) is AMENDED to provide for attorney's fees of $231,839.40, prejudgment interest of $7660.76, and post-judgment interest of $5.74 per day beginning August 12, 2011.

IT IS SO ORDERED.

Dated this 25th day of July, 2013.

_____
ROBERT C. JONES
United States District Judge